CIRCUIT COURTS.

11

State ex rel. Neff, Prosecuting Attorney, v. Maxfield.

---

## ADVANCEMENT OF CITIES—QUO WARRANTO.

2 Dec.
20

[Cuyahoga County Circuit Court, October Term, 1894.]

Baldwin, Caldwell and Hale, JJ.

*STATE OF OHIO EX REL. WM. B. NEFF, PROSECUTING ATTORNEY, v. E. A. MAXFIELD.

1. R. S. 1617 refers to the annual report for the current year, to be made on or before the 20th of November (R. S. sec. 62) and to be printed and presented to the legislature sitting the next January. It does not authorize, on an examination made in April, a special report to the legislature then sitting and commencing its session in January of that year.

2. The fact of such special report does not advance the time when under R. S. 1547 a city shall be advanced in grade.

3. After an examination in April, 1891, and a special report in the same month to the legislature then in session, the council of the city of Cleveland under and in pursuance of R. S. 1549, in February, 1892, determined that it was inexpedient that Cleveland should pass from the second grade to the first grade of the first class: *Held*, Cleveland remained a city of the second grade.

BALDWIN, J.

This is an action of *quo warranto* in this court to test the extent of the jurisdiction of E. A. Maxfield as justice of the peace.

---

*This decision, as to power of legislature to confer jurisdiction upon justices of the peace, is cited as authority in State ex rel. v. Davies, 5 Circ., Dec., 525, 527.

The defendant, Maxfield, was a justice of the peace of Brooklyn township in which was situate the village of Brooklyn, of which village he was a resident.

The village of Brooklyn, while he was in office, was annexed by proper proceedings to the city of Cleveland. This union was consummated in April, 1894. The defendant, Maxfield, claims jurisdiction as justice of the peace over the whole city of Cleveland, by virtue of the facts already stated, under Revised Statutes, section 568, as amended March 19, 1894, 91 Ohio Laws, page 78. The last part of the section as amended provides : " No justice shall be deprived of his commission until the expiration of the time for which he was elected, and except in counties containing a city of the second grade of the first class, if a part of a township is attached to another township, the justices of the peace residing in the limits of that part of the township so attached as aforesaid shall execute the duties of their office in the township to which the same is attached in the same manner as if they had been elected for such township."

It is conceded that the extent of the jurisdiction of the respondent depends upon this statute.

It is claimed by the relator that Cleveland is a city of the second grade of the first class. It is claimed by the respondent that Cleveland is a city of the first grade of the first class, and that under the provisions of this act he has jurisdiction within the limits of the entire city, as if he had been elected a justice within the city, and that he is entitled as such to the salary provided.

The question then to be determined is whether Cleveland, being a city of the first class, is a city of the second or first grade. It was, prior to the United States census of 1890, a city of the second grade of the first class. Section 1547 of the Revised Statutes provides, as far as it is necessary to quote it:

"Existing corporations organized as cities of the first class shall remain such, and their grades, and the grades of those which may be, or may become cities of the first class, shall be determined as follows : Those which on the first day of July last had, or those which hereafter on the first day of July in any year have, according to an official report or abstract of the then next preceding federal census, more than two hundred thousand inhabitants shall constitute the first grade."

The city of Cleveland had, at the federal census of 1890, a population exceeding 200,000.

An official report or abstract of the census is provided for in Revised Statutes, Title XII, Div. 2, chapter 6, sections 1617 to 1622. "Relating to the duties of state officers as to advancement or reduction in class or grade."

That " the official report or abstract " referred to in section 1547 is that provided for in this chapter, appears still more strongly in the fact that prior to the revision of the statutes the two were parts of the same act : 66 O. L., page 149, secs. 3 and 718 to 723 :

R. S. sec. 1617 provides, " It shall be the duty of the governor, auditor and secretary of state, or any two of them, at the time of ascertaining the ratio of representation, as required by the eleventh section of the eleventh article of the constitution, to ascertain what cities of the second class are entitled to become cities of the first class, what villages are entitled to become cities, and their proper class, and what hamlets are entitled to become villages; and the report of the secretary of state for such year shall contain the name of each municipal corporation, its grade and class, and its population as ascertained by the preceding federal census."

Section 1618 provides : " The secretary of state shall cause a statement of the corporations which may be so advanced, to be published in some newspaper in Columbus, and also in some newspaper published in each of the cities, villages and hamlets, which shall contain the required population to be advanced in class or grade, and a copy of said statement shall also be transmitted by the secretary of state to the general assembly, at its next session thereafter."

It is a part of the facts of this case that on the 13th day of April, 1891, the governor of Ohio, the auditor of state and the secretary of state did ascertain

State ex rel. Neff, Prosecuting Attorney, v. Maxfield.

from the census report of 1890, taken by the United States Census Bureau, the population of the cities of Ohio, and did ascertain what cities of the second grade of the first class were entitled to be advanced to cities of the first grade of the first class, and then did determine that Cleveland was entitled to be advanced to a city of that grade; that the original of said report was filed in the office of the secretary of state; a copy thereof was on that day certified to the general assembly then in session. In this appeared:

"Cities first class, second grade, entitled to be advanced to cities of first class, first grade, Cleveland."

That on the 14th of April, 1891, the secretary of state caused this said report to be published in the *Ohio State Journal*, a newspaper published at Columbus, Ohio, and in the *Cleveland Plain Dealer* and the *Cleveland Leader*, both newspapers of Cleveland.

That on the 15th day of April, 1891, the secretary of state certified to the general assembly of Ohio, an abstract of the population of the different municipal corporations of Ohio, in which Cleveland appears as a city of the second grade, first class, having a population of 261,303 in 1890, and as having a population of 160,146 in 1880.

Section 1549, R. S., provides: "That if before the first day of July in any year the council determines it to be inexpedient that a municipal corporation should pass into any other class or grade, under the operation of this section and the preceding sections, 1547 and 1548, such municipal corporation shall remain in the class or grade in which it then may be, until it is advanced under other provisions of this title; and provided further, that nothing contained in this or the preceding sections, 1547 and 1548, shall prevent advancement in the mode contemplated in the sixth chapter of this division, if it be deemed by the council expedient to submit the question in the way contemplated in that chapter." (At any time by ordinance passed for this purpose to the voters of the corporation.)

On the 15th day of February, 1892, the city council of the city of Cleveland passed the following resolution: "Resolved by the council of the city of Cleveland, that in pursuance of the provisions of section 1549 of the Revised Statutes of the state of Ohio, it is hereby determined to be inexpedient that the city of Cleveland should pass from the second grade of the first class, to which it now belongs, into the first grade of the first class under the operations of the Revised Statutes, and it is hereby declared and determined that the said city shall remain a city of the second grade of the first class."

It is said, however, that the action of the city council was too late, for the reason that by virtue of the facts already referred too, the city of Cleveland had already, on the first day of July, 1891, passed from the second grade to the first; that being, it is claimed under section 1547, the first day of July, when Cleveland had, according to the official report or abstract of the next preceding census, more than two hundred thousand inhabitants. This leads to a closer investigation of what official report is intended by the statute.

Section 1617 makes it the duty of the governor, auditor and secretary of state to ascertain "at the time of ascertaining the ratio of representation, as required by the eleventh section of the eleventh article of the constititution," what cities are entitled to be advanced.

The eleventh section of the eleventh article of the constitution requires the ratio of representation to be ascertained at least six months prior to the October election of the year 1891, and the governor is directed to cause the same to be published in such a manner as shall be directed by law.

It was in accordance with this section that the investigation was made in April, 1891, already referred to, which was published on the 15th of April, 1891, and report was then made to the legislature then in session. But it is to be noted that, although the governor, auditor and secretary were at that time to ascertain what cities were to be advanced, the subsequent action is specially provided for.

The special report of these facts to the then sitting legislature did not follow the statute. It was not the report of the secretary of state for the year 1891. Section 1617 provides, " And the report of the secretary of state for such year (1891) shall contain the name of each municipal corporation, its grade and class and its population, as ascertained by the preceding federal census."

The annual report of the secretary of state is provided for by R. S., section 62 : " All state officers and boards of officers, and the officers of all such institutions and buildings as are now or may hereafter be required to make annual reports to the general assembly, or to the governor, shall make such reports to the governor on or before the twentieth day of November of each year ; and the governor shall cause them to be printed as soon thereafter as practicable, by the printer having the contract for this branch of the public printing ; and the governor shall lay before the general assembly all such reports in printed form at the same time he lays before it his annual message, so far as they may be printed ; but nothing in this title shall be held to modify in any respect the laws in relation to the annual report of the state board of agriculture, of the commissioner of railroads and telegraphs, of the superintendent of insurance, or of the state commissioner of common schools."

It further appears by R. S. 139, that the annual report of the secretary of state is to be " to the general assembly at its next meeting." The publication of the annual report is provided for by section 66, R. S.

The annual report for the year 1891, was then not to be made in April to the legislature commencing its session on the first Monday of January, 1891, but to the general assembly which should commence its session the first Monday of January, 1892 (Art. II, Sec. 25, constitution), and was to be made on or before the twentieth of November, 1891, and to be thereafter printed for the use of the legislature of January, 1892. It is plain, then, that the report actually made in April, 1891, to the legislature of January, 1891, was not "the report of the secretary of state for such year," and did not therefore fix the first of July, 1891, as the time when Cleveland should become a city of the first grade of the first class.

But as we have seen, the council of the city of Cleveland, prior to the next first of July, and on the 25th of February, 1892, took such action under R. S., section 1549, as would prevent the advancement in grade of the city.

We are of the opinion, therefore, that the facts agreed upon in the case fail to show that Cleveland is a city of the first grade of the first class, but do show that it remained a city of the second grade of the first class.

The provisions of R. S. section 568, as amended the 19th of March, 1894, 91 O. L., 78, do not extend to it.

It was said that the exemption "except in counties containing a city of the second grade of the first class," was special and unconstitutional. If that were all true it would not help the respondent, who must avail himself affirmatively of the provisions of that section in order to maintain his position. To give him the benefit of those provisions would be to extend the statute to matters expressly excluded ; indeed to make a statute the legislature never passed.

The prayer of the petition will be granted, and judgment of ouster may issue against the defendant.

*Higby & Saltsman*, for Plaintiff.

*Marvin & Cook*, for Defendant.